## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2019 OCT 25  P 4: 01

~~[illegible stamp] CLK~~
~~[illegible] DISTRICT COURT~~
~~[illegible] DISTRICT ALA~~

|  |  |
|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.** 2:19-cv-826-WKW-SRW |
| **MCINTYRE LAND COMPANY, INC.,** | |
| **Defendant.** | |

### COMPLAINT FOR RECEIVER

**COMES NOW**, the plaintiff in this action, Branch Banking and Trust Company ("BB&T"), by and through its undersigned counsel, and for its Complaint against McIntyre Land Company, Inc, ("McIntyre Land" or "Defendant")," hereby states as follows:

### PARTIES

1.     BB&T is a banking company, chartered in the State of North Carolina, and whose principal place of business is located in the State of North Carolina, and who is authorized to transact business in the State of Alabama. BB&T is the owner of the hereafter described Loan and Loan Documents that are the subject of this Complaint.

2.     Defendant, McIntyre Land is an Alabama corporation, and maintains its principal place of business in Montgomery, Alabama. McIntyre Land is a mortgagor

42082504 v12

under the hereafter described Mortgage.

3.    The real property collateral subject to this dispute is located in Prattville, Autauga County, Alabama.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because (a) BB&T is a citizen of the State of North Carolina and McIntyre Land is a citizen of the State of Alabama, and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.    McIntyre Land is subject to personal jurisdiction in this judicial district because, *inter alia*, it is domiciled in the State of Alabama and the property subject to this dispute is located in Prattville, Autauga County, Alabama. McIntyre Land's principal place of business is in Montgomery, Alabama.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, the property that is the subject of this action is situated in this judicial district.

## NATURE OF ACTION

7.    McIntyre Building Company, Inc. ("McIntyre Building") is an Alabama corporation with its principal place of business in Montgomery, Alabama. McIntyre Building is a debtor and mortgagor under the hereafter described Loan and Loan Documents. On March 6, 2010, McIntyre Building commenced a bankruptcy case

under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") by filing a voluntary petition for relief, which was subsequently converted to a case under Chapter 7 of the Bankruptcy Code pursuant to an Order issued by the United States Bankruptcy Court for the Middle District of Alabama. McIntyre Building's Chapter 7 bankruptcy case is currently being administered as case number 10-30558-WRS. McIntyre Building is not a defendant in this action.

8.      On or about February 27, 2006, Colonial Bank made a loan in the stated principal amount of $3,105,000.00 to McIntyre Building (the "Loan"), which Loan was secured by, *inter alia*, a mortgage on certain real estate owned by McIntyre Land, which is presently leased to commercial tenants. BB&T is the current owner and holder of the Loan and the Loan Documents (as hereafter defined). McIntyre Building and McIntyre Land have defaulted under the terms of the Loan. BB&T files this Complaint to enforce its rights and remedies under such Loan Documents, and further preserve and enhance the value of the property securing the Loan. BB&T seeks the appointment of a receiver for the property securing the Loan, as well as court-ordered access to said property and financial records related to said property.

## FACTS

9.      The Loan is evidenced by that certain Promissory Note, dated February 27, 2006, as amended and renewed from time to time (the "Note") with Colonial Bank pursuant to which Colonial Bank loaned McIntyre Building the principal amount of

$3,105,000.00 according to the terms set forth in the Note. *See* Affidavit of Thomas Aderhold at ¶8 (the "Aderhold Affidavit"), and **Exhibit A** thereto. The Aderhold Affidavit is submitted herewith as **Exhibit 1**.

10.     As security for the Loan, McIntyre Building and McIntyre Land granted in favor of Colonial Bank a Mortgage and Security Agreement,  also dated February 27, 2006, (the "Mortgage"), which was recorded in the Office of the Judge of Probate of Autauga County, Alabama on April 12, 2006 in Book 2006, page 3318, and also recorded in the Office of the Judge of Baldwin County, Alabama on April 12, 2006 as Instrument No. 959587. *See* Aderhold Affidavit, at ¶9, and **Exhibit B** thereto.

11.     The Mortgage, among other things, encumbers improved property titled in the name of McIntyre Land, which property being commonly referred to as "Phase II – Shopping Center Main Parcel, Prattville Square Shopping Center" (the "Shopping Center Parcel" or the "Collateral"). *See* Aderhold Affidavit, at ¶10; **Exhibit B** to Aderhold Affidavit, at 12.

12.     On August 14, 2009, BB&T acquired assets of Colonial Bank following the commencement of the receivership of that bank by the Federal Deposit Insurance Corporation. *See* Aderhold Affidavit, at ¶2. The agreement of that date evidencing this transfer is entitled "Purchase and Assumption Agreement, Whole Bank, All Deposits, Among Federal Deposit Insurance Corporation, Receiver of Colonial Bank, Montgomery, Alabama, and Branch Banking and Trust Company, Winston-Salem,

North Carolina" (hereinafter referred to as the "Purchase and Assumption Agreement").[1] *See* Aderhold Affidavit, at ¶2.

13.     Pursuant to the Purchase and Assumption Agreement, BB&T purchased, *inter alia*, the Mortgage executed by McIntyre Land. *See* Adherhold Affidavit, at ¶3. BB&T is the current holder of the Mortgage at issue, and the related loan documents (the "Loan Documents") and is entitled to enforce them. *See* Aderhold Affidavit, at ¶3.

14.     BB&T is the owner and holder of the Loan, the Note, and the Mortgage and all other documents evidencing and securing the Loan (together with all modifications, renewals, and extensions thereof, collectively, the "Loan Documents"). *See* Aderhold Affidavit, at ¶¶3, 12. BB&T filed a proof of claim on the Note in the McIntyre Building Company bankruptcy in the amount of $2,864,969.84 (the "POC"), a copy of which is attached hereto as **Exhibit 2**. No objection to the POC has been filed, and it is therefore deemed allowed pursuant to 11 U.S.C. § 502(a).

## I.   THE "COLLATERAL SWAP" DISPUTE AND THE EVENTS OF DEFAULT

15.     Innis McIntyre ("Innis") was, at all relevant times, the President of both McIntyre Building and McIntyre Land. McIntyre Land and McIntyre Building have asserted that Innis engaged in discussions with Colonial Bank, in 2006 concerning the

---

[1]     The Purchase and Assumption can be found in its entirety at: http://www.fdic.gov/bank/individual/failed/colonial-al.html.

Shopping Center Parcel. Specifically, it was asserted that Innis sought a release of Colonial Bank's lien on the Shopping Center Parcel in exchange for granting Colonial Bank a first priority mortgage on a 165 acre parcel of raw undeveloped land in Autauga County, Alabama (the "165 Acre Parcel") owned by McIntyre Building.

16.     No mortgage was ever recorded, executed, or conveyed, to Colonial Bank by McIntyre Building with respect to the 165 Acre Parcel. Consequently, Colonial Bank never recorded, executed, or conveyed to McIntyre Land any release with respect to the Shopping Center Parcel. Despite the absence of any instruments memorializing the consummated exchange of property, McIntyre Land allegedly believed the exchange to have taken place, and on June 26, 2009, McIntyre Land executed a Promissory Note in favor of ServisFirst Bank (the "ServisFirst Note") in the amount of $1,250,000 secured by a Mortgage on the Shopping Center Parcel (the "ServisFirst Mortgage"), with the result being that both BB&T and ServisFirst held a mortgage on the Shopping Center Parcel.

17.     The Mortgage contains language which expressly establishes that any subsequent mortgage given on the collateral given to secure the Note shall result in the immediate acceleration of the entire amount due under the Note, to wit—

> **1.14 Alienation or Sale of Mortgaged Property.** The Borrower shall not sell, assign, mortgage, encumber, or otherwise convey the Mortgaged Property. If Borrower should sell, assign, mortgage, encumber or convey all, or any part of, the Mortgaged Property, then, in such event, the entire balance of the indebtedness, including the Loan

> and all other indebtedness under the Loan Documents,
> secured by this Mortgage and all interest accrued thereon
> shall without notice become due and payable forthwith.

Aderhold Affidavit, Exhibit B at 5.

18.    The grant of a mortgage by McIntyre Land in favor of ServisFirst on the

Shopping Center Parcel is a default under the Mortgage, as McIntyre Land had already

pledged the Shopping Center Parcel as collateral under the Mortgage. *See* Aderhold

Affidavit, at ¶¶14–16.

19.    McIntyre Building has also defaulted under the terms of the Note by

failing to pay BB&T the amounts due and owing thereunder. *See* Aderhold Affidavit,

at ¶13.

20.    McIntyre Building's failure to pay BB&T as required by the Loan

Documents, along with McIntyre Land's grant of a second mortgage on the Shopping

Center in favor of ServisFirst, and other various defaults (collectively, the "Defaults")

entitle BB&T to require immediate payment of all amounts owing under the Loan

Documents. *See* Aderhold Affidavit, at ¶¶15, 18–19.

21.    On October 26, 2009, BB&T provided McIntyre Building with written

notice of the defaults and acceleration related to the Loan Documents. *See* Aderhold

Affidavit, at ¶18. Despite written demand, the defaults remain outstanding. *Id.*

22.    In addition to accelerating the maturity of the Loan, the Defaults entitle

BB&T to exercise other rights and remedies under the Loan Documents, including the

right to access, take possession, to have a receiver appointed, and to dispose of the

Collateral. *See* Aderhold Affidavit, at ¶¶19.

23. More specifically, the Mortgage contains language which expressly

establishes that any time after a breach of any covenant or agreement set forth in the

Mortgage, BB&T shall have the right to a receiver, as follows:

> 2.04 Receiver.
>
> (a) If an Event of Default shall have occurred and be continuing, the Lender, upon application to a court of competent jurisdiction, shall be entitled, without notice and without regard to the adequacy of any security for the indebtedness hereby secured or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Mortgaged Property and to collect the rents, profits, issues, and revenues thereof.
>
> (b) The Borrower[2] will pay to the Lender upon demand all expenses, including receiver's fees, attorneys' fees, costs and agents' compensation, incurred pursuant to the provisions contained in this Paragraph 2.04; and all such expenses shall be secured by this Mortgage.

*See* Aderhold Affidavit, at ¶20.

24. McIntyre Building has not made any payments under the Loan since

April 27, 2009. *See* Aderhold Affidavit, at ¶13. As of October 25, 2019, McIntyre

Building is liable to BB&T in the amount of $4,474,740.94 under the Note, plus costs

and attorneys' fees (the "Indebtedness"). *Id*. The Indebtedness consists of principal in

---

[2] The term "Borrower" is defined in the Mortgage to mean McIntyre Building and McIntyre Land.

8

the amount of $2,490,617.91, accrued interest in the amount of $1,984,123.06, late fees and other allowed expenses. *Id.*

## II. THE BANKRUPTCY COURT LITIGATION

25.     On April 15, 2010, McIntyre Land initiated an adversary proceeding in the Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") by the filing of its original compliant (the "Original Complaint") against McIntyre Building, Innes McIntyre, IV, and BB&T. *See, e.g.,* Complaint, Adv. Pro. 10-03029 [Dkt. No. 1].[3] This Original Complaint alleged that BB&T, by and through Colonial Bank, either represented that it would, and/or agreed to, enter into a collateral swap agreement with respect to the Loan whereby McIntyre Building was to grant Colonial Bank a first priority mortgage on a 165 acre parcel of raw land in Autauga County, Alabama, in exchange for a release of the lien on the Shopping Center Parcel. *See* Original Complaint, at 11 ¶¶9–10.

26.     On August 11, 2010, McIntyre Land filed its amended complaint ("Amended Complaint") [Dkt. No. 18]. However, on September 14, 2010, McIntyre Land filed a Motion to Dismiss its own Amended Complaint, without prejudice,

---

[33] The Affiant has not testified to matters concerning documents filed in *McIntyre Land v. BB&T*, Adv. Pro. 10-03029 (Bankr. M.D. Ala. 2010) or *McIntyre Land Company v. McIntyre Building Company*, Case No. 12-555 (M.D. Ala. 2012) because copies of all documents referenced are publicly available, speak for themselves, and "Courts may take judicial notice of publicly filed documents." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *Gamble v. PinnOak Res., LLC*, 511 F.Supp.2d 1111, 1123 n.5 (N.D. Ala. 2007) ("[T]he court may take judicial notice of court documents[.]").

pursuant to Fed. R. Bankr. P. 7041. *See* [Dkt. No. 30].

27.    On October 13, 2010, prior to the Bankruptcy Court ruling on the Motion

to Dismiss, BB&T filed its *Answer to Amended Complaint and Cross-Claim Against*

*McIntyre Building Company, Inc. and Counter-Claim against McIntyre Land*

*Company, Inc.* (the "Counterclaim"), Adv. Pro. 10-03029 [Dkt. No. 34], seeking—

> [A]n Order from this Court declaring that the lien and
> security interest of BB&T in and to the Shopping Center
> Parcel, and all proceeds thereof, is valid and in full force
> and effect, and that BB&T it is entitled to utilize the rights
> afforded to it thereunder, and under any applicable laws; or
> in the event the Court finds that BB&T does not have a
> valid lien in and on the Shopping Center Parcel, that it issue
> an Order granting BB&T [an equitable] lien in and on the
> 165 Acre Parcel."

Counterclaim, at 16.

28.    On October 21, 2010, the Bankruptcy Court entered an Order

dismissing the Amended Complaint. *See Order*, Adv. Pro. 10-03029 [Dkt. No. 37].

The Order did not reference or dispose of the claims asserted by BB&T in its

Counterclaim.

29.    Following dismissal of the Amended Complaint, McIntyre Land filed

an additional complaint (the "Second Complaint") against BB&T in the Circuit

Court of Montgomery County, Alabama on October 26, 2010, in which it sought

essentially the same relief that it sought in the Original Complaint, as amended. The

Second Complaint was subsequently removed by BB&T to the Bankruptcy Court,

*see Notice of Removal*, Case No. 10-03084 [Dkt. No. 1], and consolidated with Adv. Pro. 10-03029 [Dkt. No. 58].

30. The above-referenced litigation, as consolidated (the "Adversary Proceeding") was briefed and litigated extensively until it came before the Bankruptcy Court for trial on January 26, 2012. On May 30, 2012, the Bankruptcy Court entered *Proposed Findings of Fact and Conclusions of Law*, Adv. Pro. 10-03029 [Dkt. No. 156] (the "PFFCL"), pursuant to which, the Court found—

> The undersigned recommends that the District Court enter judgment as follows: (1) Land's complaint should be dismissed with prejudice; and (2) judgment should be entered in favor of BB&T on its counterclaim, declaring that **BB&T has a valid and subsisting mortgage on the Prattville Square Shopping Center by virtue of its mortgage dated February 27, 2006, and that the mortgage has not been released.**

PFFCL, at 27 (emphasis added).

31. Between June 28, 2012 and August 30, 2012, the PFFCL and the record in the Adversary Proceeding were submitted to the U.S. District Court for the Middle District of Alabama (the "District Court"). *See, e.g., McIntyre Land Company, Inc. et al v. McIntyre Building Company, Inc.*, No. 2:12-cv-00555-ALB; *see Transmittal of Proposed Findings of Fact and Conclusions of Law*, No. 10-03029 [Dkt. No. 161]; *Clerk's Statement*, No. 10-03029 [Dkt. No. 164] ("I have transmitted the trial exhibits submitted in bankruptcy court on January 26, 2012 to the Clerk of the United States District Court.").

32.    On August 28, 2012, the District Court entered an Order setting the PFFCL for submission without oral argument as of September 4, 2012. *See Order*, No. 2:12-cv-00555-ALB [Dkt. No. 5].

33.    On May 15, 2019, and prior to any decision being entered, the case was reassigned to Judge Andrew L. Brasher. *See Notice of Reassignment*, No. 2:12-cv-00555-ALB [Dkt. No. 13]. Judge Brasher requested oral argument on the PFFCL, which was held on September 18, 2019. *See Oral Argument*, No. 2:12-cv-00555-ALB [Dkt. No. 44]. On October 8, 2019, the District Court affirmed the Bankruptcy Court's PFFCL. *See Memorandum Opinion and Order* (the "Order"), No. 2:12-CV-00555-ALB [Dkt. No. 172], and *Final Judgment*, No. 2:12-cv-00555-ALB [Dkt. No. 173] (the "Final Judgment").

## III.    ATTORNEY'S FEES

34.    BB&T has, as of September 30, 2019, incurred in excess of $200,000.00 in legal fees with Burr & Forman LLP, and has incurred in excess of $6,000.00 in costs (either directly, or through Burr & Forman) to defend the validity and first priority of the Mortgage in the Adversary Proceeding. Aderhold Affidavit, at ¶28. With respect to expenses of BB&T as lender under the Mortgage, the Mortgage provides that—

> **Expenses. The Borrower will pay or reimburse the Lender for all reasonable attorneys' fees, costs . . . or other fees . . . incurred by Lender with respect to:**

(a) **Further mortgages . . . as shall be deemed necessary or desirable, in the sole discretion of Lender, in order to . . . continue or preserve the obligation of the Borrower under the Note, this Mortgage and the Loan Documents, and the priority of this Mortgage as a first and prior lien upon all of the Mortgaged Property,** whether now owned or hereinafter acquired by the Borrower;

(b) **Any proceeding involving the estate of . . . an insolvent, or any action, proceeding or dispute of any kind in which the Lender appears, responds to a subpoena, provides an affidavit, testifies, is deposed or is made a party, or appears as party plaintiff or defendant, affecting this Mortgage, the Note, the Loan Documents, Borrower or the Mortgaged Property . . . .**

And any such amounts paid by the Lender shall be added to the indebtedness secured hereby and shall be further secured by this Mortgage.

Aderhold Affidavit, Exhibit B, at 1.09 p. 4 (emphasis added). BB&T is entitled to recover its attorney's fees and costs from McIntyre Land. *See* Aderhold Affidavit, at ¶24.

## IV. STATUS OF THE SHOPPING CENTER PARCEL

35.  The Shopping Center Parcel is operational, but BB&T has been thwarted by McIntyre Land in its attempts to ascertain the financial condition and inspect the business records with respect to the Shopping Center Parcel. *See* Aderhold Affidavit, at ¶29.

36.  In June of 2019, BB&T hired an appraiser (the "2019 Appraisal") and commissioned a new appraisal of the Shopping Center Parcel, requesting that

McIntyre Land provide it and\or the appraiser with the: (i) current rent roll; (ii) income statements from 2017 and 2018; (iii) year-to-date profit and loss statement; and the (iv) cell tower lease. *See* Aderhold Affidavit, at ¶30. To date, McIntyre Land has failed to cooperate with BB&T and the appraiser hired by BB&T has not received the documents requested. *Id.* Cooperation with BB&T in this regard is an affirmative obligation of McIntyre Land, as the Mortgage provides that—

> If requested by Lender, Borrower will furnish Lender with executed copies of all leases now or hereafter created on the Mortgaged Property[.] Aderhold Affidavit, Exhibit B, at 1.09(a) p. 4.

> Upon request of the Lender, the Borrower will furnish to the Lender, within ten (10) days of such request . . . a rent schedule of the Mortgaged Property, certified by the Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date and the rent paid. Aderhold Affidavit, Exhibit B, at 1.12 p. 4–5.

*Id.* Failure of McIntyre Land to comply with these provisions of the Mortgage is a default, as the Mortgage provides that "Event of Default . . . shall mean . . . [f]ailure by the Borrower to duly observe any other covenant, condition or agreement of this Mortgage, of the Note, or of any of the Loan Documents[.]" Aderhold Affidavit, Exhibit B, at 2.01(b) p. 5.

37.    Further, BB&T is aware that the Shopping Center Parcel has suffered physical damage, as detailed in the *Motion for Status Conference*, No. 2:12-cv-00555-ALB [Dkt. No. 12], which states—

Recently, McIntyre Land, the accommodation mortgagor under the Subject Mortgage, has filed the following lawsuits: (1) *McIntyre Land Inc. v. Travelers Casualty and Surety Co.*, Case No. 04-cv-2018-900025.00 [Dkt. No. 2] (Ala. Cir. Ct. (Autuaga County) January 30, 2018); and (2) *McIntyre Land Inc. v. Central/Long McGehee, Inc.*, No. 04-cv-2018-900054.00 [Dkt. No. 2] (Ala. Cir. Ct. (Autauga County) February 26, 2018)[.]

. . .

In *McIntyre Land Inc. v. Travelers Casualty and Surety Co.*, McIntyre Land alleges that it contracted with Attic Insulation Co. of Montgomery to repair a portion of the roof of the Shopping Center located at 103 North Memorial Drive, Prattville, AL 36067. Case No. 04-cv-2018-9000025.00, at 5 ¶17 [Dkt. No. 2] (Ala. Cir. Ct. (Autuaga County) January 30, 2018). Upon information and belief, that portion of the Shopping Center relates to property leased by Laser Copy, Inc., a shipping, packing, and printing business. McIntyre Land alleges that the contracted-for roof repair was both improperly and negligently completed, *id.* at 5, 7 ¶¶17, 19, 27, 28, 29, which resulted in standing rainwater accumulating and ultimately leaking through the portion of the Shopping Center roof leased by Laser Copy. Id. at 5 ¶19.

In *McIntyre Land Inc. v. Central/Long McGehee, Inc.*, McIntyre Land alleges that it contracted with Central/Long-McGehee for the installation of an HVAC system on the roof of a portion of the Shopping Center located at 151 North Memorial Drive, Prattville, AL 36067. No. 04-cv-2018-9000054.00, at 2 ¶6. [Dkt. No. 2] (Ala. Cir. Ct. (Autuaga County) February 26, 2018). Upon information and belief, that portion of the Shopping Center relates to property leased by Planet Fitness, a fitness center and health club. McIntyre Land alleges that the allegedly contracted for HVAC system was both improperly and negligently completed, id. at 2-3, 4 ¶¶8, 16, 17, 18, which resulted in water leaking through the roof and damaging the portion of the Shopping Center leased by Planet Fitness. Id. at 3 ¶8.

*Motion for Status Conference*, No. 2:12-cv-00555-ALB, at 3–4 ¶¶6–8. As the damage

to the Shopping Center forms the basis of actions filed by McIntyre Land, the fact of

this damage is undisputed.

38.    BB&T learned of the damage to the Shopping Center Parcel by virtue of

the litigation filed by McIntyre Land after the damage had taken place, rather than by

McIntyre Land informing BB&T of the damage referenced in *McIntyre Land Inc. v.*

*Travelers Casualty and Surety Co.*, Case No. 04-cv-2018-900025.00 [Dkt. No. 2]

(Ala. Cir. Ct. (Autuaga County) January 30, 2018) (the "<u>Travelers Litigation</u>") and

*McIntyre Land Inc. v. Central/Long McGehee, Inc.*, No. 04-cv-2018-900054.00 [Dkt.

No. 2] (Ala. Cir. Ct. (Autauga County) February 26, 2018) (individually, the "<u>Central</u>

<u>Litigation</u>," and together with the Travelers Litigation, the "<u>State Court Litigation</u>").

*See* Aderhold Affidavit, ¶32. The Mortgage makes notification of damage to the

Shopping Center Parcel an affirmative obligation of McIntyre Land and McIntyre

Building, providing—

> In the event of loss, **Borrower will give immediate notice**
> by mail to Lender[.] Aderhold Affidavit, Exhibit B, at 1.05
> p. 3.
>
> **[T]he Borrower will give immediate written notice** . . .
> to the Lender . . . [i]f the Mortgaged Property or any part
> thereof is damaged by fire or any other cause[.] Aderhold
> Affidavit, Exhibit B, at 1.07(b) p. 3.

The failure of McIntyre Land and McIntyre Building to give BB&T immediate written

notice of the damage referenced in the State Court Litigation is an act of default, as

the Mortgage provides that "Event of Default . . . shall mean . . . [f]ailure by the Borrower to duly observe any other covenant, condition or agreement of this Mortgage, of the Note, or of any of the Loan Documents[.]" Aderhold Affidavit, Exhibit B, at 2.01(b) p. 5.

39.    In addition to: (1) the default in the payment of the Indebtedness by McIntyre Building; (2) McIntyre Land's failure to cooperate with BB&T concerning the 2019 Appraisal; and (3) McIntyre Building's and McIntyre Land's failure to give BB&T immediate notice of the damage suffered by the Shopping Center Parcel—all events of default under the Mortgage—McIntyre Land is also diverting the rents it receives in relation to the Shopping Center Parcel for its own use and such rents are not being used to service the Indebtedness. *See* Aderhold Affidavit, at ¶33. Indeed, despite the Note and Mortgage being first in time against the ServisFirst Note and the ServisFirst Mortgage, BB&T has not received any payments due under the Note. *See* Aderhold Affidavit, at ¶13.

40.    The District Court has affirmed the PFFCL, which found that "BB&T has a valid and subsisting mortgage on the Prattville Square Shopping Center by virtue of its mortgage dated February 27, 2006, and that the mortgage has not been released." PFFCL, at 27; *see Order*, at 26 ("The Bankruptcy Court's Proposed Findings and Fact and Conclusions of Law . . . are ADOPTED . . . . In the alternative, the Bankruptcy Court is AFFIRMED.") (emphasis in original); *Final Judgment*, at 2 ("Branch

Banking and Trust Company, Inc. is ADJUDGED to have a valid mortgage lien on the Prattville Square Shopping Center[.]") (emphasis in original).

41.    In light of McIntyre Building and McIntyre Land's continuing defaults under the Mortgage, BB&T intends to exercise its right, as soon as possible to liquidate the Shopping Center Parcel, either through a non-judicial foreclosure sale or a receiver's sale, and apply the proceeds to the Indebtedness. *See* Aderhold Affidavit, at ¶30. Prior to the liquidation of the Shopping Center Parcel, a receiver is necessary to manage the Shopping Center Parcel and the day-to-day obligations of McIntyre Land, as landlord, to the respective tenants located on the Shopping Center Parcel. Without a receiver overseeing the Shopping Center Parcel, the viability and value of the Shopping Center Parcel will very likely be negatively impacted to the detriment of BB&T (and ServisFirst). A receiver is further needed to provide adequate management of the Shopping Center Parcel to ensure that necessary repairs are made, that it is fully leased at market rates, and that it does not deteriorate any further. Moreover, inasmuch as the Shopping Center Parcel secures both the Indebtedness and the ServisFirst Note, McIntyre Land likely has no equity in the Shopping Center Parcel, and therefore, no incentive whatsoever to expend funds to maintain and repair it. Rather, McIntyre Land would be motivated to retain as much of as the rents as possible for its own use, and to continue to deprive BB&T of the rents and profits of

18

the Shopping Center Parcel.[4]

42.     Accordingly, it is imperative that the receiver have authority and control over all aspects of the Shopping Center Parcel in order to fully preserve the Shopping Center Parcel and ultimately to sell it for the maximum price possible, once it is stabilized, for benefit of all parties having an interest in it, in the order of their priority.

43.     McIntyre Land and\or ServisFirst have each filed a Notice of Appeal of the Final Judgment to the United States Court of Appeal for the Eleventh Circuit (the "11th Circuit"). *See* 2:12-cv-00555-ALB [Dkt. Nos. 47 and 48].   BB&T will agree

---

[4] McIntyre Land assigned the leases, rents, and profits of the Shopping Center Parcel to BB&T pursuant to paragraph (c) of the Mortgage, which provides that McIntyre Land does grant, bargain, sell, alien and convey—

Together with all easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, leases, rights, titles, interest, privileges, liberties, tenements, hereditaments, and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property hereinabove described or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Borrower, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of the Borrower of, in and to the same, including but not limited to

    i.   All rents, royalties, profits, issues and revenues of the Mortgaged Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to Borrower, however, so long as Borrower is not in default hereunder, the right to receive and retain the rents, issues and profits thereof and

    ii.   All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Mortgaged Property or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the improvements thereon or any part thereof, or to any rights appurtenant thereto, including any award for change of grade or streets. Lender is hereby authorized on behalf of and in the name of Borrower to execute and deliver valid acquittances for, and appeal from, any such judgments or awards. Lender may apply all such sums or any part thereof so received, after the payment of all its expenses, including costs and attorneys' fees, on any of the indebtedness secured hereby in such manner as it elects, or at its option, the entire amount or any part thereof so received may be released[.]

that the Receiver would not be authorized to conduct a sale of the Shopping Center Parcel, unless, and until such time, as a final, non-appealable Judgment or Order was entered by the 11th Circuit, affirming the Final Judgment. Rather, BB&T would propose that the Receiver would maintain all net rents and profits of the Shopping Center Parcel in a segregated bank account pending further order of this Court.

## COUNT ONE – BREACH OF CONTRACT

44.    BB&T realleges and reincorporates all preceding paragraphs of this Complaint as if set forth fully herein.

45.    McIntyre Building has failed to pay the amounts due under the Note, and both McIntyre Building and McIntyre Land have breached their obligations under the Loan Documents by, without limitation: (1) failing to notify BB&T of damage to the Shopping Center Parcel; (2) failing to cooperate in the manner specified in the Mortgage concerning provision of leases and borrower-certified rent schedules; and (3) granting a second and subsequent mortgage to ServisFirst on the Shopping Center Parcel.

## COUNT TWO – ATTORNEY'S FEES

46.    BB&T realleges and reincorporates all preceding paragraphs of this Complaint as if set forth fully herein.

47.    The Loan Documents, including, without limitation, the Mortgage

provide that BB&T is entitled to recover its expenses, including attorney's fees, costs, and other fees, incurred in the course of either: (1) preserving the obligations of the Defendants under the Note, Mortgage, and the Loan Documents, and the priority of the Mortgage as a first and prior lien upon all the Shopping Center Parcel; or (2) representation of BB&T in any proceeding involving the estate of an insolvent, or any action, proceeding or dispute of any kind in which BB&T appears, responds to a subpoena, provides an affidavit, testifies, is deposed or is made a party, or appears as party plaintiff or defendant, affecting the Mortgage, the Note, the Loan Documents, Borrower or the Shopping Center Parcel.

48.     In defending itself in the Adversary Proceeding, which McIntyre Land initiated, maintained, and tried against BB&T, BB&T has incurred in excess of $200,000.00 in attorney's fees and has incurred in excess of $6,000.00 in costs, which BB&T is due to have reimbursed by McIntyre Land.

## COUNT THREE – CONTRACTUAL RECEIVERSHIP

49.     BB&T realleges and reincorporates all preceding paragraphs of this Complaint as if set forth fully herein.

50.     Under the terms of the Mortgage, and in light of above-described Defaults, BB&T is contractually entitled to the appointment of a receiver to take possession of, and to operate the business operations of McIntyre Land to preserve and enhance the value of the Shopping Center Parcel.  Absent a receiver, BB&T faces

a threat that: (i) the Shopping Center Parcel will decrease in value; (ii) McIntyre Land

will fail to turn over all the rents and profits to BB&T and take other actions to the

detriment of BB&T's interest in the Shopping Center Parcel prior to an ultimate

foreclosure sale or other disposition; and (iii) absent a landlord with BB&T's best

interests at stake, especially one lacking equity in the property, operations at the

Shopping Center Parcel will suffer to the detriment of BB&T. Failure to address these

concerns through the appointment of a receiver will also adversely affect the tenants

of the Shopping Center Parcel, and injure the interest of BB&T (and ServisFirst) in

the process.

51.     BB&T expects that the court-appointed receiver will provide a good and

sufficient bond if so required by this Court, in such sum as this Court deems proper,

for the payment of any costs, expenses, or damages that may be incurred by the

appointment of a receiver.

52.     BB&T proposes that Andrew J. Bolnick, and his firm, Andrew Bolnick

& Associates, Inc. (collectively "Bolnick") be appointed by this Court as receiver.[5]

As demonstrated by the Affidavit of Bolnick attached hereto as **Exhibit 3**, Bolnick is

well-qualified to serve as receiver for the Shopping Center Parcel, and in fact has been

previously appointed by this Court to serve as a receiver for an income producing

---

[5] A proposed Order granting BB&T's Complaint for Receiver is attached hereto as **Exhibit 4**.

property in Dothan, AL. *See BB&T v. Crew Development Company, Inc*, et al., No.

1:14-cv-01063-WHA-CSC [Dkt. No. 13] (M.D. Ala. April 15, 2015) (Judge Harold

Albritton, presiding).

Dated this the $25^{\wedge}$ day of _October_ 2019.

/s/ Joe A. Joseph
Joe A. Joseph (AL Bar # ASB-2964-J50J)
James Roberts (AL Bar # ASB-1461-X40R)
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
Phone: (205) 251-3000
E-mail: jjoseph@burr.com
          jroberts@burr.com

*Attorney for Branch Banking & Trust
Company, Inc.*

PLAINTIFF REQUESTS SERVICE VIA SPECIAL PROCESS SERVER OF THE SUMMONS AND COMPLAINT.

McIntyre Land Company, Inc.
3049 Fieldcrest
Montgomery, AL 36106

/s/ Joe A. Joseph
Joe A. Joseph