IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRANCH BANKING AND TRUST CO., A FOREIGN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MCINTYRE LAND CO., AN ALABAMA CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 2:19-cv-826-ALB<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's motion that a receiver be appointed to manage a shopping center. *See* Doc. 10. Upon consideration, the motion is GRANTED. A receiver will be appointed by a separate order.

## **BACKGROUND**

Plaintiff Branch Banking and Trust Co., which has since been renamed Truist Bank, ("Truist") filed this action for the appointment of a receiver to assume control over a shopping center owned by Defendant McIntyre Land Co. ("Land"). *See* Doc. 1. Before this action, the parties had been engaged in a long-running dispute about whether Truist has a lien on the shopping center. The Court recently resolved that dispute in Truist's favor. *See In re McIntyre Bldg. Co. Inc.*, 2019 WL 4984822, at *11 (M.D. Ala. Oct. 8, 2019). Land sought to stay this Court's judgment pending

appeal, but it did not file the supersedeas bond the Court required as a condition of a stay. Accordingly, Truist's complaint in this case to enforce its lien is ripe for decision.

Three facts are undisputed or have been established in related litigation between the parties. First, the note secured by the mortgage on the shopping center has not been paid. In fact, payments have not been made for a very long time. Second, Land mortgaged the shopping center a second time to another bank. Third, Truist's disputed lien on the shopping center is approximately the same or more than the value of the shopping center. In other words, assuming Truist has a lien on the shopping center, Land has zero or very little equity in the shopping center.

Truist argues that, because of the undisputed facts above, Land has no incentive to effectively manage or maintain the property pending its appeal of the Court's judgment in the related litigation.[1] Accordingly, Truist asks that the firm Andrew Bolnick & Associates, Inc. be appointed to manage the property.

## **STANDARD**

It is settled law that, even when sitting in diversity, federal law governs all requests for receivership appointments. *National Partnership Inv. Corp. v. National*

---

[1] Truist has also submitted evidence that Land has allowed damage to occur on the premises of the shopping center. Land disputes that submission. The Court need not resolve that dispute here and will not consider Truist's evidence on this point. The Court also denies Land's request for an evidentiary hearing because all the relevant facts are undisputed or have been established in related litigation.

2

*Housing Development Corp.,* 153 F.3d 1289,1291–92 (11th Cir.1998). However, the Eleventh Circuit "has not addressed how a contractual receivership provision impacts the decision whether to appoint a receiver." *Cadence Bank, N.A. v. E. 15th St., Inc.*, 2013 WL 2151743, at *3 (M.D. Fla. May 16, 2013). Therefore, courts within this Circuit have been left to devise their own tests.

## DISCUSSION

In response to Truist's request for a receiver, Land has made two arguments. Neither is persuasive.

First, Land argues that it has not defaulted because Colonial Bank, the predecessor to Truist, released the shopping center as collateral in December 2006. This is the same argument that the Court rejected in the related litigation. The Court's judgment in that case establishes that, regarding Land's claim for quiet title/breach-of-contract, "[n]o representative of Land signed anything that would meet the dictates of Section 1823(e)-a release, a collateral swap, or Colonial's letter about the collateral swap." *In re McIntyre Bldg. Co. Inc.*, 2019 WL 4984822, at *10. Because Land chose not to stay that judgment pending appeal, it is final.

Land's request to relitigate Truist's quiet title/breach of contract claim in this case is barred by the doctrine of *res judicata*. When determining whether a claim is barred by *res judicata*, a federal court must apply the law of the state in which it sits. *See Laskar v. Peterson*, 771 F.3d 1291, 1299 (11th Cir. 2014). In Alabama, "the

3

essential elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala. 1998).  With all elements met, any claim is barred that was or might have been decided in the prior action.  The fourth element does not require an exact match between the two actions.  Alabama uses the "substantial evidence" test to decide if there is sufficient similarity. *Id.* at 637. "Under this test, res judicata applies when the same evidence substantially supports both actions."  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308–09 (11th Cir. 2006).  There was a prior judgment on the merits of this issue, the parties are the same, this Court is one of competent jurisdiction and, because both the receivership request and the breach-of-contract claim rely on establishing what documents Land signed, Land's arguments are precluded here on the grounds of *res judicata*.

Land also cannot relitigate the specific issue of whether Truist's lien is valid because that precise issue was resolved in the prior litigation.  According to Alabama law, the elements of collateral estoppel are whether the issue is (1) identical to the one litigated in the prior suit, (2) actually litigated in the prior suit, (3) necessary to the prior judgment, and (4) involves the same parties.  *See Stinnett v. Kennedy*, 232 So. 3d 202, 220 (Ala. 2016).  All these elements are met here.  As the question of

the lease's validity is a predicate to the determination of default, the issue is identical, actually litigated, and necessary to the prior judgment. The parties are also identical. Accordingly, the issue is precluded from repeat litigation.

Second, Land argues that a receivership is not an appropriate remedy. More specifically, Land argues that a receivership ought not to be granted by this Court unless there is fraud, waste, or irreparable injury. Land argues that Truist's showing cannot meet that standard. Truist responds that, because a receivership is provided for as a remedy in the contractual agreement, no such showing is necessary.

The Court concludes that, even under Land's proposed test, a receiver should be appointed. Courts generally apply an equitable test to a motion like Truist's. The Ninth Circuit, for example, has identified the following equitable factors for a court to consider: "(i) whether [the party] seeking the appointment has a valid claim; (ii) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (iii) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (iv) whether legal remedies are inadequate; (v) the balance of harms as between the party seeking appointment of a receiver and those opposing it; (vi) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (vii) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, 2014 WL 6065778,

5

at *5 (S.D. Ala. Nov. 13, 2014) (quoting *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009)).

Having evaluated these factors, the Court concludes that a receiver should be appointed for the following reasons.

First, there is no question that Truist has a strong claim. Truist has already succeeded on the merits in the underlying litigation pending an appeal. And it is undisputed that Truist's loan has not been repaid and is in default. Moreover, the Court concluded in the related litigation that Truist would suffer irreparable injury to its interest if the judgment were stayed without a supersedeas bond. And Land failed to provide a supersedeas bond.

Second, Truist's claim to a receiver is supported by the express language of the underlying mortgage documents. Section 2.04 of the mortgage agreement provides that a receivership would take place upon default "without notice" and "without regard to the adequacy of any security." Even if this contract language were not dispositive, it is a factor of substantial weight in balancing the equities. *See e.g. D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 490 (S.D.N.Y. 2008) (holding that such a provision "strongly supported" the appointment of a receiver); *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1260 (D. Or. 2009) (finding that such a provision "commands great weight" in the final decision); *Cadence Bank, N.A. v. E. 15th St., Inc.*, 2013 WL 2151743, at

\*3 (M.D. Fla. May 16, 2013) (holding that such contractual provisions are "at a minimum…entitled to great weight); *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, 2014 WL 6065778, at \*4 (S.D. Ala. Nov. 13, 2014) (holding that the consent provision is one that should be entitled to "substantial weight").

Third, the value of the property does not exceed the value of Truist's lien, making this situation ripe for abuse and waste. *Compare LPP Mortg. Ltd. v. Ondyn Herschelle*, 2014 WL 3568577, at \*4 (N.D. Cal. July 17, 2014) (denying motion to appoint receiver because the value of the property was far greater than the loan). The original loan was for 3.1 million dollars. *See* Doc. 12 at 4. With interest and fees, the indebtedness currently stands at about 4.5 million. *See* Doc. 10-1 at 3. But an appraisal in the related litigation found the shopping center parcel to be worth about 3.2 million dollars. *See* 2:12-cv-00555-ALB, Doc. 94-1 at 10. The upshot is that Land has little or no financial incentive to maintain the property while the appeal is pending.

Fourth, Truist has no adequate remedy at law. Land's sister company and owner filed for bankruptcy. No payments have been made on the note since April 27, 2009.

Fifth, the appointment of a receiver is the most equitable way to balance the parties' competing interests in the property. Because Land did not file a supersedeas

bond to stay the Court's judgment in the related litigation, Truist is free to foreclose on its lien and sell the shopping center while Land's appeal is pending. By appointing a receiver to manage the shopping center during the appeal, the Court can protect Truist's interest in the property without transferring ownership of the property to Truist or a third-party. In the event Land's appeal is successful, control over the property can be transferred back to Land. To ensure that the equities are balanced in this way, the Court will prohibit the receiver from selling the property without further order of the Court. The Court will also prohibit Truist from pursuing other remedies, such as foreclosure, during the pendency of the receivership.

## CONCLUSION

Based on the foregoing, Truist's motion, Doc. 10, is GRANTED. Truist assures this Court that the firm of Andrew Bolnick and Associates has a long track record of distressed real estate management and carries the necessary insurance. Land does not dispute it. Therefore, Bolnick will be appointed as a receiver in a separate order.

**DONE** and **ORDERED** this 26th day of June 2020.

                                           /s/ Andrew L. Brasher
                                        ANDREW L. BRASHER
                                        UNITED STATES DISTRICT JUDGE